# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
05/22/2020
CT Log Number 537700399

**TO:**    Chris Dzbanski
FORD MOTOR COMPANY
1 American Rd Whq 421-E6
Dearborn, MI 48126-2701

**RE:**    **Process Served in California**

**FOR:**    Ford Motor Company  (Domestic State: DE)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:**    Bryan Dejong, etc., Pltf. vs. Ford Motor Company, etc., et al., Dfts.

**DOCUMENT(S) SERVED:**    -

**COURT/AGENCY:**    None Specified
Case # 20STCV17629

**NATURE OF ACTION:**    Product Liability Litigation - Lemon Law

**ON WHOM PROCESS WAS SERVED:**    C T Corporation System, Los Angeles, CA

**DATE AND HOUR OF SERVICE:**    By Process Server on 05/22/2020 at 12:27

**JURISDICTION SERVED :**    California

**APPEARANCE OR ANSWER DUE:**    None Specified

**ATTORNEY(S) / SENDER(S):**    None Specified

**ACTION ITEMS:**    CT has retained the current log, Retain Date: 05/22/2020, Expected Purge Date: 05/27/2020

Image SOP

Email Notification,  Chris Dzbanski  cdzbansk@ford.com

**SIGNED:**    C T Corporation System
**ADDRESS:**    1999 Bryan St Ste 900
Dallas, TX 75201-3140

**For Questions:**    877-564-7529
MajorAccountTeam2@wolterskluwer.com

Page 1 of  1 / YC

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Electronically FILED by Superior Court of California, County of Los Angeles on 05/08/2020 01:06 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk
20STCV17629

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

FORD MOTOR COMPANY, A Delaware Corporation; and DOES 1
through 20, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

BRYAN DEJONG, an individual,

*FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)*

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Stanley Mosk Courthouse | CASE NUMBER: *(Número del Caso)*: 20STCV17629 |
|---|---|

111 N. Hill Street
Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David N. Barry, Esq. 11845 W. Olympic Blvd., Suite 1270, Los Angeles, CA 90064 (310) 684-5859

| DATE: 05/08/2020 *(Fecha)* | Clerk, by *(Secretario)* | Sherri R. Carter Executive Officer / Clerk of Court  R Clifton | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |
|---|---|---|

Electronically FILED by Superior Court of California, County of Los Angeles on 05/08/2020 01:06 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton, Deputy Clerk
20STCV17629

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Mark Mooney

1 | DAVID N. BARRY, ESQ. (SBN 219230)
THE BARRY LAW FIRM
2 | 11845 W. Olympic Blvd., Suite 1270
Los Angeles, CA 90064
3 | Telephone: 310.684.5859
Facsimile: 310.862.4539
4 |
Attorneys for Plaintiff, BRYAN DEJONG
5 |

6 |

7 |

8 | ## SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | ## FOR THE COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE

10 | BRYAN DEJONG, an individual,

Case No.  20STCV17629

11 |

12 |          Plaintiff,

**COMPLAINT FOR DAMAGES**

13 |     v.

14 |

15 | FORD MOTOR COMPANY, A Delaware

16 | Corporation;  and  DOES  1  through  20,

17 | inclusive,

*Assigned for all purposes to the Hon.*
*in Dept.*

18 |          Defendants.

19 |

20 |

21 |     1.   Breach of Implied Warranty of Merchantability under the Song-Beverly Warranty Act.

22 |     2.   Breach of Express Warranty under the Song-Beverly Warranty Act.

23 |     3.   Fraudulent Concealment.

24 | JURY TRIAL DEMANDED.

25 |

26 |

27 |

28 |

PLAINTIFF BRYAN DEJONG, an individual, hereby alleges and complains as follows:

**GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

1. Defendant, FORD MOTOR COMPANY (hereinafter referred to as "Manufacturer"), is a corporation doing business in the County of Los Angeles, State of California, and, at all times relevant herein, was/is engaged in the manufacture, sale, distribution, and/or importing of Ford motor vehicles and related equipment.

2. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants, Does 1 through 20, inclusive, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to set forth their true names and capacities when they have ascertained them. Further, Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as a "Doe" is responsible in some manner for the events and happenings herein referred to and caused injury and damage to Plaintiff as herein alleged.

3. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants, and each of them, were the agents, servants, and/or employees of each of their Co-Defendants. Plaintiff is informed and believes, and thereon alleges, that in doing the things hereinafter alleged Defendants, and each of them, were acting in the course and scope of their employment as such agents, servants, and/or employees, and with the permission, consent, knowledge, and/or ratification of their Co-Defendants, principals, and/or employers.

4. On or about February 20, 2012, defendants Manufacturer and Does 1 through 20 inclusive, manufactured and/or distributed into the stream of commerce a new 2012 Ford Focus, VIN 1FAHP3M25CL362717 (hereinafter referred to as the "Vehicle") for its eventual sale/lease in the State of California.

5. On or about March 20, 2012, Plaintiff purchased, for personal, family, and/or household purposes, the new subject Vehicle from the Seller. The purchase agreement is in the possession of Defendants.

6. The subject Vehicle was/is a "new motor vehicle" under the Song-Beverly Warranty Act.

7. Along with the purchase of the Vehicle, Plaintiff received written warranties and other express and implied warranties including, but not limited to, warranties from Manufacturer and Seller that the Vehicle and its components would be free from all defects in material and workmanship; that the Vehicle would pass without objection in the trade under the contract description; that the Vehicle would be fit for the ordinary purposes for which it was intended; that the Vehicle would conform to the promises and affirmations of fact made; that Defendants, and each of them, would perform any repairs, alignments, adjustments, and/or replacements of any parts necessary to ensure that the Vehicle was free from any defects in material and workmanship; that Defendants, and each of them, would maintain the utility of the Vehicle for Three (3) years or 36,000 miles under the basic warranty, Five (5) years or 60,000 miles under the powertrain warranty, Seven (7) years or 100,000 miles under the 14M01 extended warranty and Ten (10) years or 150,000 miles under the emissions warranty and the 14M02 extended warranty, and would conform the Vehicle to the applicable express warranties. (A copy of the written warranties is in the possession of the Defendants).

8. Plaintiff has duly performed all the conditions on Plaintiff's part under the purchase agreement and under the express and implied warranties given to plaintiff, except insofar as the acts and/or omissions of the Defendants, and each of them, as alleged herein, prevented and/or excused such performance.

9. Plaintiff has delivered the Vehicle to the Manufacturer's authorized service and repair facilities, agents and/or dealers, including Seller, on at least Three (3) separate occasions resulting in the Vehicle being out of service by reason of repair of nonconformities. Repair Orders/Invoices are in the possession of Defendants.

///
///
///
///

10.   By way of example, and not by way of limitation, the defects, malfunctions, mis adjustments, and/or nonconformities with Plaintiff's Vehicle include the following: Plaintiff has

1  submitted the subject Vehicle for defects and malfunctions, specifically for issues with

2  transmission issues, check engine light, electrical issues, brake failures, engine malfunction,

3  Powertrain Module Control Reprogram, Transmission Control Module Reprogram, and Anti-lock

4  Braking System Reprogram over PMC, TCM and ABS Failure, TSB 15-0120 for Transmission

5  Control Module, clutch replacement failure.

6       11.     Each time Plaintiff delivered the nonconforming Vehicle to a Manufacturer-

7  authorized service and repair facility, Plaintiff notified Defendants, and each of them, of the

8  defects, malfunctions, mis adjustments, and/or nonconformities existent with the Vehicle and

9  demanded that Manufacturer or its representatives repair, adjust, and/or replace any necessary parts

10  to conform the Vehicle to the applicable warranties.

11       12.     Each time Plaintiff delivered the nonconforming Vehicle to a Manufacturer-

12  authorized service and repair facility, Defendants, and each of them, represented to Plaintiff that

13  they could and would conform the Vehicle to the applicable warranties, that in fact they did

14  conform the Vehicle to said warranties, and that all the defects, malfunctions, mis adjustments,

15  and/or nonconformities have been repaired; however, Manufacturer or its representatives failed to

16  conform the Vehicle to the applicable warranties because said defects, malfunctions, mis

17  adjustments, and/or nonconformities continue to exist even after a reasonable number of attempts

18  to repair was given.

19       13.     The subject vehicle is equipped with Ford's "PowerShift Transmission." This

20  transmission was designed and marketed as a more advanced and fuel-efficient alternative to a

21  traditional manual or automatic transmission.  The Powershift Transmission was installed in both

22  the Ford Focus and Ford Fiesta vehicle's.  Ford offered it as the sole "Automatic" option in the

23  subject vehicle.

24       14.     Plaintiff is informed and believes that traditional manual transmissions use a drive-

25  controlled clutch. By pressing and releasing a foot pedal, the driver engages and disengages the

26  engine from the transmission, allowing the vehicle to travel smoothly while the driver manually

27  changes gears.

28       15.     Typical automatic transmissions free the driver from operating the clutch through

the use of a fluid-filled device called a torque converter. The torque converter substitutes for the manual transmission through fluid medium. While typical automatic transmissions offer increased convenience, they are generally less fuel efficient and slower-shifting than their manual counterparts. This is because the torque converter transfers power less efficiently than a clutch.

16.    Ford's PowerShift Transmission, while sometimes referred to as an "automatic," is actually a set of computerized manual transmission. It lacks a torque converter, instead using two "dry" clutches to directly engage and disengage the engine with and from the transmission. Whereas similar "automated manual" transmissions on the market use "wet" clutches bathed in oil, Ford's PowerShift Transmission clutches lack the oil pumps and other components of a wet clutch system, and instead operate "dry."

17.    Plaintiff is informed and believes that Ford designed the subject vehicle's PowerShift Transmission in an effort to meet heightened governmental and consumer expectations for fuel economy, performance, and efficiency. According to Ford's own press release dated March 10, 2010, "PowerShift with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear shifts saves weight, improves efficiency, increases smoothness, adds durability and is sealed with low-friction gear lubricant for the life of the vehicle. This transmission requires no regular maintenance."

18.    Ford marketed and sold this "PowerShift Transmission" as a best of both worlds alternative offering a manual transmission's fuel economy with an automatic transmission's ease of operation and shift quality. In practice, however, Ford's PowerShift Transmission is plagued by numerous problems and safety concerns which have only recently come to public light.

19.    Specifically, the PowerShift Transmission contains one or more design and/or manufacturing defects that cause, among other problems, transmission slips, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle (the "Transmission Defect").

20.    The Transmission Defect causes unsafe conditions, including, but not limited to, the subject vehicle suddenly lurching forward, delayed acceleration, and sudden loss of forward propulsion. These conditions present a safety hazard because they severely affect the driver's

ability to control the car's speed, acceleration, and deceleration. For example, these conditions make it difficult to safely merge into traffic. Even more troubling, the Transmission Defect can cause the vehicle to fail to downshift and decelerate when the brakes are depressed. As a result, drivers of the affected vehicles have experienced their cars lurching forward into intersections at red lights due to the failure of their braking efforts to stop the car.

21.    The Transmission Defect also causes premature wear to the Dual Clutch Transmission's clutch plates and other components, which results in premature transmission failure and requires expensive repairs, including transmission replacement.

22.    Beginning as early as 2010, Defendant was aware that the PowerShift Transmission contained one or more design and/or manufacturing defects that negatively affect the drivability of the subject vehicle and cause safety hazards. Specifically, before offering vehicles with the PowerShift Transmission for sale in the United States, Ford offered the same vehicles, equipped with a similar dual-clutch transmission, in Europe and Australia. Although the United States version utilizes dry-clutches as opposed to the European and Australian version's wet-clutches, Ford acknowledged that the transmission offered for sale in the United States is "derivative" of the design from the European and Australian models. European and Australian versions of the dual-clutch transmission suffered from similar defects known to Ford as alleged herein.

23.    In addition to having years of feedback and testing from its European and Australian dual-clutch transmission, according to Ford, its team:

> "logged approximately three years or 60,000 man-hours of computer-aided mathematical modeling, simulation and analysis of engine speeds, torque and clutch capacity in only 24 months real time to prove the THF concept was production ready."

24.    Torque Hole Vectoring is a program in the PowerShift Transmission that uses a combination of computer algorithms and computer aided tools to fill the torque hole, or what is more commonly perceived as a hesitation, while shifting. Ford claimed the Torque Hole Vectoring technology would create a smoother driving experience for the customer.

-6-
COMPLAINT FOR DAMAGES

25.    Despite these claims, plaintiff is informed and believes that consumers have not experienced a smoother ride from Torque Hole Vectoring, or any other technology incorporated in the PowerShift Transmission. To the contrary, multiple reviews in automotive journals and customer complaints documented and confirmed that the transmissions in other vehicles were exhibiting the defects, malfunctions, mis adjustment, and nonconformities that the Plaintiff's vehicle has experienced and which are now complained of.

26.    In a 2011 New York Times review of the Ford Focus, the reviewer stated that "Ford programmed the PowerShift dual-clutch transmission to change gears in odd and infuriating ways" and that "[t]he transmission is often in the wrong gear at the wrong time, resulting in jerks, pauses and lethargic acceleration."

27.    In response to these criticisms, Greg Burgess, an engineer at Ford, conceded in the same New York Times article that "[i]t is quite a challenge to deliver something that is very, very fuel-efficient and yet feels like conventional automatic, and there are some balances and some tradeoffs that we make."

28.    As a result of the Transmission Defect, in 2010 and 2011, Ford even issued several Technical Service Bulletins ("TSBs") to its dealers in the United States acknowledging defects in the PowerShift Transmission. Ford's TSB from September 2010, covering plaintiff's vehicle, informed dealers of "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or a check engine light with transmission control module (TCM) diagnostic trouble code..."

29.    Similarly, Ford's TSB released on January 1, 2011, covering plaintiff's vehicle with the PowerShift Transmission, informs dealers of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

30.    Ford's TSB from March 31, 2011, also covering the PowerShift Transmission informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

31.    Ford subsequently issued two separate TSBs in May of 2011, both covering the Ford Fiesta. These TSBs addressed problems with the PowerShift Transmission including

-7-
COMPLAINT FOR DAMAGES

1  "concerns in Drive or Reverse when shifting from Park to Drive or reverse, no engagement…"

2       32.     Another Ford TSB released in September 2011 advised dealers to reprogram the

3  transmission computer if 2011 Ford Fiesta owners complained about "hesitation when accelerating

4  from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in

5  or tip-out maneuvers and/or engine RPM flare when coasting to a stop."

6       33.     The 2012 Ford Focus was the subject of a September 2011 Ford TSB, which

7  informed dealers of transmission problems including: "RPM flare on deceleration coming to a top,

8  rough idle on deceleration coming to a stop, intermittent engine idle on deceleration coming to a

9  stop, intermittent engine idle fluctuation at a stop, intermittent vehicle speed control inoperative,

10  intermittent harsh engagement/shift…"

11       34.     In May of 2012, Ford issued a "Customer Satisfaction Program" Program Number

12  12B37." In a letter sent to 2012 Ford Focus drivers, Ford indicated that drivers "may experience

13  rough or jerky automatic transmission shifts. In addition, the vehicle may experience roll back

14  when the driver is transitioning from the brake pedal to the accelerator pedal while on a slight

15  incline." Significantly, Ford did not issue a recall and did not warn drivers of the safety risks

16  associated with these known problems.  Because Ford will not notify owners of the vehicle's

17  equipped with the PowerShift Transmission, including Plaintiff, that the transmission is defective,

18  they are subjected to dangerous driving conditions that often occur without warning.

19       35.     Ford was well aware of the PowerShift Transmission defects that began in 2010 and

20  which continue to pose dangerous safety concerns and drivability problems consumer vehicles such

21  as the plaintiffs. However, Ford refused to acknowledge these concerns. Instead of repairing the

22  defects in the subject vehicle's transmission, Ford either refused to acknowledge their existence, or

23  performed ineffectual software upgrades that simply masked the defects.

24       36.     Plaintiff has only recently learned from a September 10, 2019 investigative article

25  from the Detroit Free Press, that transmission problems plaguing the subject vehicle were not just

26  specific to the subject vehicle but that it involved virtually all of the Focus and Fiesta model

27  vehicles sold beginning with model year 2010-2011. Plaintiff's review of that article also revealed

28  that Ford was well aware of the inherent problems and defects that plagued the PowerShift

Transmission but failed to correct them and in fact, hid them from the public. In fact, the article stated, in part:

> "The automaker pushed past company lawyers' early safety questions and a veteran development engineer's warning that the cars weren't roadworthy, internal emails and documents show. Ford then declined, after the depth of the problem was obvious, to make an expensive change in the transmission technology. Instead, the company kept trying to find a fix for the faulty transmission for five years while complaints and costs piled up. In the interim, Ford officials prepared talking points for dealers to tell customers that the cars operated normally when, in fact, internal documents are peppered with safety concerns and descriptions of the defects."

37. At the time that plaintiff purchased his vehicle, he was not aware of the inherent defects that plagued the PowerShift Transmission. Further, plaintiff was not informed of or advised of pervasive transmission problems at the time the subject vehicle was purchased and plaintiff had no previous knowledge of any issues. Likewise, throughout plaintiff's repeated presentation of the subject vehicle to authorized Ford dealerships for repair of the transmission concerns, no one at the repairing dealership informed the plaintiff that the PowerShift Transmission was inherently defective and was essentially, unrepairable as plaintiff has now learned.

38. If Plaintiff had known about these defects at the time of sale or lease and if the information was made publicly available, Plaintiff would not have purchased or leased the subject vehicle.

39. In fact, as demonstrated in the September10, 2019 investigative report from the Detroit Free Press, Ford had superior and exclusive knowledge of the transmission defects and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff before he purchased or leased the subject vehicle. Indeed, the investigative report is culled from internal company documents and materials identified and produced in lawsuits which plaintiff was not a party to and would not have had access to as such documents are ordinarily produced confidentially. Further, Ford was clearly engaged in damage control and was working to "control the narrative" instead of informing customers that the vehicle was defective and pulling the vehicle

1    from the market.  No amount of due diligence by the plaintiff would have uncovered such

2    information that was exclusive to the Ford.

3         40.    The amount in controversy exceeds TWENTY-FIVE THOUSAND DOLLARS

4    ($25,000.00), exclusive of interest and costs, for which Plaintiff seeks judgment against

5    Defendants, together with equitable relief.  In addition, Plaintiff seeks damages from Defendants,

6    and each of them, for incidental, consequential, exemplary, and actual damages including interest,

7    costs, and actual attorneys' fees.

8    ///

9    ///

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

COMPLAINT FOR DAMAGES

**FIRST CAUSE OF ACTION**

**Breach of Implied Warranty of Merchantability under Song-Beverly Warranty Act**

**Against all Defendants**

41.  Plaintiff realleges each and every paragraph (1-41) and incorporates them by this reference as though fully set forth herein.

42.  The distribution and sale of the Vehicle was accompanied by the Manufacturer implied warranty that the Vehicle was merchantable.

43.  Furthermore, Defendants, and each of them, impliedly warranted, inter alia, that the Vehicle would pass without objection in the trade under the contract description; that the Vehicle was fit for the ordinary purposes for which it was intended; that the Vehicle was adequately assembled; and/or that the Vehicle conformed to the promises or affirmations of fact made to Plaintiff.

44.  As evidenced by the defects, malfunctions, mis adjustments, and/or nonconformities alleged herein, the Vehicle was not merchantable because it did not have the quality that a buyer would reasonably expect, because it could not pass without objection in the trade under the contract description; because it was not fit for the ordinary purposes for which it was intended; because it was not adequately assembled; and/or because it did not or could not be conformed to the promises or affirmations of fact made to Plaintiff.

45.  Upon discovery of the Vehicle's nonconformities, Plaintiff took reasonable steps to notify Defendants, and each of them, within a reasonable time that the Vehicle did not have the quality that a buyer would reasonably expect and, further, justifiably revoked acceptance of the nonconforming Vehicle.

46.  Plaintiff hereby gives written notice and justifiably revokes acceptance of the nonconforming Vehicle under the Commercial Code sections 2607 and 2608. Plaintiff further demands that the Manufacturer cancel the sale, take back the nonconforming Vehicle, refund all the money expended, pay the difference between the value of the Vehicle as accepted and the value the Vehicle would have had if it had been as warranted, and/or pay damages under the Commercial Code sections 2711, 2714, and 2715. Defendants, and each of them, have, however, refused to

1  comply.

2       47.    Plaintiff hereby gives written notice and makes demand upon Manufacturer for

3  replacement or restitution, pursuant to Song-Beverly. Defendants, and each of them, knew of their

4  obligations under Song-Beverly; however, despite Plaintiff's demand, Defendants and each of

5  them, have intentionally failed and refused to make restitution or replacement pursuant to Song-

6  Beverly.

7       48.    As a result of the acts and/or omissions of the Defendants, and each of them, Plaintiff

8  has sustained damage in the amount actually paid or payable under the contract, plus prejudgment

9  interest thereon at the legal rate. Plaintiff will seek leave to amend this Complaint to set forth the

10  exact amount thereof when that amount is ascertained.

11       49.    As a further result of the actions of Defendants, and each of them, Plaintiff has

12  sustained incidental and consequential damages in an amount yet to be determined, plus interest

13  thereon at the legal rate. Plaintiff will seek leave to amend this Complaint to set forth the exact

14  amount of incidental damages when that amount is ascertained.

15       50.    As a further result of the actions of Defendants, and each of them, Plaintiff has

16  sustained damages equal to the difference between the value of the Vehicle as accepted and the

17  value the Vehicle would have had if it had been as warranted.

18       51.    As a direct result of the acts and/or omissions of Defendants, and each of them, and

19  in pursuing Plaintiff's claim, it was necessary for Plaintiff to retain legal counsel. Pursuant to

20  Song-Beverly, Plaintiff, in addition to his other remedies, is entitled to the recovery of his

21  attorneys' fees based upon actual time expended and reasonably incurred, in connection with the

22  commencement and prosecution of this action.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

# SECOND CAUSE OF ACTION

## Breach of Express Warranty under Song-Beverly Warranty Act

### Against all Defendants

52.　　Plaintiff realleges each and every paragraph (1-52) and incorporates them by this reference as though fully set forth herein.

53.　　The Vehicle had defects, malfunctions, mis adjustments, and/or nonconformities covered by the warranty that substantially impaired its value, use, or safety to Plaintiff.

54.　　Plaintiff delivered the Vehicle to Manufacturer or its authorized repair facilities for repair.

55.　　Defendants, and each of them, failed to service or repair the Vehicle to match the written warranty after a reasonable number of opportunities to do so.

56.　　The acts and/or omissions of Defendants, and each of them, in failing to perform the proper repairs, part replacements, and/or adjustments, to conform the Vehicle to the applicable express warranties constitute a breach of the express warranties that the Manufacturer provided to Plaintiff, thereby breaching Defendants' obligations under Song-Beverly.

57.　　Defendants, and each of them, failed to perform the necessary repairs and/or service in good and workmanlike manner. The actions taken by Defendants, and each of them, were insufficient to make the Subject Vehicle conform to the express warranties and/or proper operational characteristics of like Vehicles, all in violation of Defendants' obligations under Song-Beverly.

58.　　Plaintiff hereby gives written notice and makes demand upon Manufacturer for replacement or restitution, pursuant to Song-Beverly. Defendants and each of them, knowing their obligations under Song-Beverly, and despite Plaintiff's demand, failed and refused to make restitution or replacement according to the mandates of Song-Beverly. The failure of Defendants, and each of them, to refund the price paid and payable or to replace the Vehicle was intentional and justifies an award of a Civil Penalty in an amount not to exceed two times Plaintiff's actual damages.

59.　　As a result of the acts and/or omissions of Defendants, and each of them, and

-13-
COMPLAINT FOR DAMAGES

pursuant to the provisions of the Song-Beverly, Plaintiff is entitled to replacement of the Vehicle or restitution of the amount actually paid or payable under the contract, at Plaintiff's election, plus prejudgment interest thereon at the legal rate. Plaintiff will seek leave of Court to amend this Complaint to set forth the exact amount of restitution and interest, upon election, when that amount has been ascertained.

60.    Additionally, as a result of the acts and/or omissions of Defendants, and each of them, and pursuant to Song-Beverly, Plaintiff has sustained and is entitled to consequential and incidental damages in amounts yet to be determined, plus interest thereon at the legal rate. Plaintiff will seek leave of the court to amend this complaint to set forth the exact amount of consequential and/or incidental damages, when those amounts have been ascertained.

61.    As a direct result of the acts and/or omissions of Defendants, and each of them, and in pursuing Plaintiff's claim, it was necessary for Plaintiff to retain legal counsel. Pursuant to Song-Beverly, Plaintiff, in addition to other remedies, is entitled to the recovery of his attorneys' fees based upon actual time expended and reasonably incurred, in connection with the commencement and prosecution of this action.

///
///
///
///
///
///
///
///
///
///
///
///
///

-14-

COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THIRD CAUSE OF ACTION

### Fraudulent Concealment

### Against all Defendants

62.    Plaintiff realleges each and every paragraph (1-62) and incorporates them by this reference as though fully set forth herein.

63.    Defendant knew well before plaintiff purchased the subject vehicle, that the PowerShift transmission defective.   Defendant was under a duty to disclose the PowerShift Transmission problems because of the nature and extent of the problems which clearly posed safety issues.

64.    Defendants intended to conceal the information.   The September 10, 2019 Detroit Free Press investigative article which plaintiff has recently learned of establishes that Ford engaged in an effort to withhold from its consumers, the valuable information about quality problems in the PowerShift Transmissions.   Ford created "talking points' for its dealer network and otherwise instructed its dealers to advise that the transmission operated "normally." In fact, the opposite was true.

65.    At the time of sale and throughout the repair efforts, Plaintiff had no reason to doubt that Ford or its dealer was/were acting in good faith and being fully transparent with all pertinent information.   Further, plaintiff relied on the fact that Ford and the dealership understood the problems plaintiff was experiencing and that they were specific to plaintiff's vehicle instead part of a widespread inherent product defect that plaintiff has only recently learned was omitted from the information provided at the time of sale as well as during each repair visit.

66.    Further, Defendants, and each of them, deceived Plaintiff by promising that the subject vehicle would conform to the applicable warranties, when Defendants knew that the subject vehicle's defects could not, in fact, be repaired.

67.    As a direct and proximate result of Defendants' misrepresentations or omissions of material fact, Plaintiff has suffered damages, including actual, consequential, and incidental damages, according to proof.

1    68.    Plaintiff's reliance on Defendants' representations with regard to the subject vehicle

2   was a substantial factor in causing Plaintiff's harm and, therefore, Plaintiff is entitled to rescission

3   of the Contract, and restitution in an amount according to proof at hearing.

4   ///

5   ///

6   ///

7   ///

8   ///

9   ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

A. For replacement or restitution, at Plaintiff's election, according to proof;

B. For incidental damages, according to proof;

C. For consequential damages, according to proof;

D. For a civil penalty as provided in Song-Beverly, in an amount not to exceed two times the amount of Plaintiff's actual damages;

E. For actual attorney's fees, reasonably incurred;

F. For costs of suit and expenses, according to proof;

G. For the difference between the value of the Vehicle as accepted and the value the Vehicle would have had if it had been as warranted;

H. For remedies provided in Chapters 6 and 7 of Division 2 of the Commercial Code;

I. For pre-judgment interest at the legal rate;

J. For punitive damages according to proof;

K. Such other relief the Court deems appropriate.

Date:   April 27, 2020                       THE BARRY LAW FIRM


By:
DAVID N. BARRY, ESQ.
Attorney for Plaintiff,
BRYAN DEJONG

-17-
COMPLAINT FOR DAMAGES

<table>
<tr><td colspan="2">

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

**NOTICE OF CASE ASSIGNMENT**

**UNLIMITED CIVIL CASE**

</td><td>

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

05/08/2020

Sherri R. Carter, Executive Officer / Clerk of Court

By _____ R. Clifton _____ Deputy

</td></tr>
</table>

| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER: 20STCV17629 |
|---|---|

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Mark V. Mooney | 68 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 05/08/2020
    (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By R. Clifton _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION

The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS

All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS

Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE

A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions

Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases

Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 03 2019**

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )    FIRST AMENDED GENERAL ORDER
— MANDATORY ELECTRONIC FILING )
FOR CIVIL )
)
)
)
_____ )

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"**  A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**  The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**  A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**  Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

e) **"Electronic Filing Service Provider"**   An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**   For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**   An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**   A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

   a) Trial Court Records

   Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

   b) Represented Litigants

   Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

   c) Public Notice

   The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) **EXEMPT LITIGANTS**

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) **EXEMPT FILINGS**

a) The following documents shall not be filed electronically:

   i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

   ii) Bonds/Undertaking documents;

   iii) Trial and Evidentiary Hearing Exhibits

   iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

   v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

2019-GEN-014-00

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

   a) Electronic documents must be electronically filed in PDF, text searchable format when technologically feasible without impairment of the document's image.

   b) The table of contents for any filing must be bookmarked.

   c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

   d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

      i)    Depositions;

      ii)   Declarations;

      iii)  Exhibits (including exhibits to declarations);

      iv)   Transcripts (including excerpts within transcripts);

      v)    Points and Authorities;

      vi)   Citations; and

      vii)  Supporting Briefs.

   e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

   f) Accompanying Documents

      Each document acompanying a single pleading must be electronically filed as a separate digital PDF document.

   g) Multiple Documents

      Multiple documents relating to one case can be uploaded in one envelope transaction.

h)  Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i)  Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j)  Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a)  Filed Date

i)  Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing.  Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.   (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii)  Notwithstanding any other provision of this order, if a digital document is not filed in due course because of:  (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8)  EX PARTE APPLICATIONS

a)  Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

2019-GEN-014-00

1      b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the

2          day of the ex parte hearing.  A printed courtesy copy of any opposition to an ex parte

3          application must be provided to the court the day of the ex parte hearing.

4  9) PRINTED COURTESY COPIES

5      a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must

6          be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled.  If

7          the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom

8          by 10:00 a.m. the next business day.

9      b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of

10         electronic submission) is required for the following documents:

11         i)    Any printed document required pursuant to a Standing or General Order;

12         ii)   Pleadings and motions (including attachments such as declarations and exhibits) of 26

13             pages or more;

14         iii)  Pleadings and motions that include points and authorities;

15         iv)  Demurrers;

16         v)    Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

17         vi)   Motions for Summary Judgment/Adjudication; and

18         vii)  Motions to Compel Further Discovery.

19      c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of

20         additional documents.  Courtroom specific courtesy copy guidelines can be found at

21         www.lacourt.org on the Civil webpage under "Courtroom Information."

22 10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

23      a) Fees and costs associated with electronic filing must be waived for any litigant who has

24         received a fee waiver.  (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. §

25         1010.6(d)(2).)

26      b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure

27         section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be

28         electronically filed in any authorized action or proceeding.

2019-GEN-014-00

1  11) SIGNATURES ON ELECTRONIC FILING

2      For purposes of this General Order, all electronic filings must be in compliance with California

3      Rules of Court, rule 2.257.  This General Order applies to documents filed within the Civil

4      Division of the Los Angeles County Superior Court.

5

6          This First Amended General Order supersedes any previous order related to electronic filing,

7  and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8  Supervising Judge and/or Presiding Judge.

9

10  DATED:  May 3, 2019



KEVIN C. BRAZILE
Presiding Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



Superior Court of California
County of Los Angeles



Los Angeles County
Bar Association
Litigation Section

Los Angeles County
Bar Association Labor and
Employment Law Section



Consumer Attorneys
Association of Los Angeles



Southern California
Defense Counsel



Association of
Business Trial Lawyers



California Employment
Lawyers Association

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◇Los Angeles County Bar Association Litigation Section◇**

**◇ Los Angeles County Bar Association
Labor and Employment Law Section◇**

**◇Consumer Attorneys Association of Los Angeles◇**

**◇Southern California Defense Counsel◇**

**◇Association of Business Trial Lawyers◇**

**◇California Employment Lawyers Association◇**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

<table>
<tr><td>NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY</td><td>STATE BAR NUMBER</td><td>Reserved for Clerk's File Stamp</td></tr>
<tr><td>TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name):    FAX NO. (Optional):</td><td></td><td></td></tr>
</table>

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

The parties agree that:

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11
For Optional Use                    **STIPULATION – DISCOVERY RESOLUTION**                    Page 1 of 3

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

    iii.    Be filed within two (2) court days of receipt of the Request; and

    iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE | CASE NUMBER |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____ (TYPE OR PRINT NAME)    > _____ (ATTORNEY FOR PLAINTIFF)

Date:

_____ (TYPE OR PRINT NAME)    > _____ (ATTORNEY FOR DEFENDANT)

Date:

_____ (TYPE OR PRINT NAME)    > _____ (ATTORNEY FOR DEFENDANT)

Date:

_____ (TYPE OR PRINT NAME)    > _____ (ATTORNEY FOR DEFENDANT)

Date:

_____ (TYPE OR PRINT NAME)    > _____ (ATTORNEY FOR _____)

Date:

_____ (TYPE OR PRINT NAME)    > _____ (ATTORNEY FOR _____)

_____ (TYPE OR PRINT NAME)    > _____ (ATTORNEY FOR _____)

LACIV 229 (Rev 02/15)
LASC Approved 04/11       **STIPULATION – EARLY ORGANIZATIONAL MEETING**       Page 2 of 2

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:          FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER |
|---|---|

1. This document relates to:
   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request)

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

The parties agree that:

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

---

LACIV 075 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

Page 1 of 2

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

## The following parties stipulate:

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

 **Superior Court of California, County of Los Angeles**

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control (with the parties):** Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.
   
   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

How to arrange mediation in Los Angeles County

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

The Civil Mediation Vendor Resource List
If all parties agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

• ADR Services, Inc. Case Manager patricia@adrservices.com (310) 201-0010 (Ext. 261)
• JAMS, Inc. Senior Case Manager mbinder@jamsadr.com (310) 309-6204
• Mediation Center of Los Angeles (MCLA) Program Manager info@mediationLA.org (833) 476-9145
  o Only MCLA provides mediation in person, by phone and by videoconference.

These organizations cannot accept every case and they may decline cases at their discretion.
Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
NOTE: This program does not accept family law, probate, or small claims cases.

b. Los Angeles County Dispute Resolution Programs
https://wdacs.lacounty.gov/programs/drp/
  • Small claims, unlawful detainers (evictions) and, at the Spring Street Courthouse, limited civil.
    o Free "day of trial" mediations at the courthouse. No appointment needed.
    o Free or low-cost mediations before the day of trial.
    o For free or low-cost Online Dispute Resolution (ODR) by phone or computer before the day of trial visit:
      http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer EngSpan.pdf

Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

LASC CIV 271 Rev. 01/20
For Mandatory Use

2